422 So.2d 754 (1982)
In the MATTER OF the ESTATE of Roy C. ATKINS, Sr. Deceased.
George William ATKINS, Executor
v.
Edna SARTIN.
No. 53519.
Supreme Court of Mississippi.
December 1, 1982.
Stennett, Wilkinson & Ward, Derryl W. Peden, Jackson, for appellant.
William R. Barnett, P. Zeb Jones, Jackson, for appellee.
Before PATTERSON, C.J., and BOWLING and PRATHER, JJ.
*755 BOWLING, Justice, for the Court:
This appeal involves a question of first impression that should be of interest to the bench and bar and particularly the banking institutions. The primary question is the authority of a conservator to withdraw funds from a joint bank account of the ward prior to the ward's death.
Roy C. Atkins, Sr., deceased, and Edna Sartin, appellee herein, for a number of years prior to Atkins' death, were closely associated in business and in their personal lives. The personal association was extremely close, to say the least. The business was sold in 1976 and the monies received from the sale were equally divided between the two parties. On February 8, 1977, Roy C. Atkins, Sr. delivered a holographic will to Wright & Ferguson Funeral Home in Jackson and placed it in the care of funeral director Ellis Wright, Jr. The terms of the will later developed to omit appellee from taking any of the personal or real property of the deceased. The beneficiaries were certain of his children.
The next important event in the saga occurred on October 5, 1978, when Mr. Atkins opened a silver savings "joint" account with Peoples Bank of Mississippi by depositing $14,000 in his name jointly with appellee Edna Sartin. Although Atkins was alone when he went to the bank and opened the account, appellee signed the signature card.
On October 19, 1978, Atkins was admitted to the hospital where he remained until his death on January 24, 1979. Meanwhile Atkins' son, George William Atkins, was appointed conservator of his father on January 19, 1979. On January 22, 1979, two days before his father's death, the conservator withdrew the entire amount of the joint savings account in the sum of the original deposit of $14,000, plus accrued interest, and placed it in a conservatorship account.
A few days after Atkins' death, appellee filed a bill of complaint to "Determine Ownership of Funds." She requested and was granted a preliminary injunction by the Chancery Court of the First Judicial District of Hinds County prohibiting the conservator from disposing of the funds prior to final determination of their ownership.
Appellee Mrs. Sartin also filed a bill of complaint contending that on February 8, 1977, Atkins was not competent to execute the will that had been holographically prepared and left with the funeral home, as hereinbefore set out. Appellant, executor of the Atkins estate, filed a cross complaint contending that Atkins was not mentally competent when he opened the joint savings account on October 5, 1978. Appellant contended that due to the relationship of the deceased and appellee Mrs. Sartin, a fiduciary and confidential relationship existed between them which rendered the opening of the joint account void under the presumption set out in prior opinions of this Court, and that Mrs. Sartin did not meet the burden of overcoming that presumption. In Re: Will of Moses, 227 So.2d 829 (Miss. 1969); Ham v. Ham, 146 Miss. 161, 110 So. 583 (1926).
Appellant further contended, in answer to appellee's claim of the entire amount of the joint account, that the conservator had full authority to withdraw all of the account prior to the death of Atkins.
The chancellor held that there was not such a fiduciary and confidential relationship that existed between Atkins and appellee so as to create a presumption that the opening of the joint account was void. He further held that Atkins was competent when he opened the joint account and understood his actions and was exercising his wishes.
The chancellor further found that Atkins was of sound and disposing mind and memory when he executed the holographic will on February 8, 1977.
We shall not relate in detail the evidence presented by both appellant and appellee on the relationship of Atkins and appellee and the testimony of various witnesses regarding the competency of Atkins on the dates in question and the court's ruling on the lack of a fiduciary and confidential relationship sufficient to create a presumption that the actions of Atkins in opening the account *756 were void. The evidence on all these questions was conflicting. Some of these conflicts are irreconcilable in the record. We do not need to cite the many opinions of this Court which hold that we shall not disturb the findings of the chancellor unless it is shown by the record that he was manifestly in error. Although the questions mentioned above are close, we cannot say with confidence that the chancellor was manifestly in error.
This leaves for us to discuss the authority or lack of authority of the conservator to withdraw the funds from the joint account prior to the death of one of the account holders. As stated, Atkins' son, George William Atkins, was appointed conservator on January 19, 1979. On January 22, 1979, he, as conservator, without any further authority from the court, withdrew with the bank's consent the entire balance of the joint account. Atkins died two days later. The chancellor in his final decree gave a money decree to appellee Mrs. Sartin against appellant in the sum of the original joint account deposit plus interest until the date of the decree.
As stated, appellant contends that the conservator had the same authority to withdraw funds from the joint account as Mr. Atkins prior to his death. This Court has not passed on this question; neither have many other courts been presented this issue. We do, however, find authority for holding as we do; that is, that the conservator is not the alter ego of the joint depositor and during the life of the depositor the conservator does not have authority to withdraw all of the account funds unless specific sums are needed for his ward's necessities. A summary of this holding appears in Annot., 62 A.L.R.2d 1092 (1958), as follows:
It is clear, by the generally recognized rule, that when one joint depositor becomes incompetent, his guardian does not succeed to his full discretionary rights in the account, but, at best, is merely privileged to withdraw, if necessary, what is essential for the incompetent's maintenance. The result is that the whole nature of the account, usually formed upon the basis of a trust or understanding between parties whose competence is assumed by them, undergoes a radical change. Whereas originally two parties had prima facie equal rights in the use of the account, one party, the guardian, is an unequal party, after the adjudication of incompetence, at least until a court decree makes a division or defines the relative rights.
The Alabama Supreme Court in Howard v. Imes, 265 Ala. 258, 90 So.2d 818, 62 A.L.R.2d 1086 (1956), stated the following:
The question presented on this appeal is whether the act of withdrawal by the bank, as guardian, of all the funds in the joint account had the effect of destroying Mrs. Imes' survivorship interest in the account. In other words, did the Bank, as guardian have the power to withdraw all the funds, even though not needed for the care and maintenance of Mrs. Hughes, so as to prevent Mrs. Imes from taking as survivor?
There are no statutory provisions in Alabama prescribing the authority of a guardian in exercising the elective rights of the ward under a joint bank account. Nor have we found any occasion where this court has passed on the question.
It appears to be the generally accepted rule that a guardian cannot exercise a purely personal elective right of his ward. In re Wainman's Estate, 121 Misc. 318, 200 N.Y.S. 893; Chase Nat. Bank of City of New York v. Ginnel, Sup., 50 N.Y.S.2d 345; Application of National Commercial Bank & Trust Co., Sup., 50 N.Y.S.2d 274; Kay v. Erickson, 209 Wis. 147, 244 N.W. 625, 84 A.L.R. 361; Boehmer v. Boehmer, 264 Wis. 15, 58 N.W.2d 411; 44 C.J.S., Insane Persons, § 49, p. 134, where the rule is thus stated:
"The guardian * * * of a mental incompetent does not become his alter ego, and is not empowered by virtue of his office to act for the incompetent in matters involving the exercise of a personal discretion so as to change an act performed by the incompetent while mentally normal, * * *."

*757 In applying the rule it has been specifically held that the guardian of a non compos mentis cannot withdraw all the funds in a joint account except for the ward's necessities, since such complete withdrawal would be the exercise of a personal right of the ward. Boehmer v. Boehmer, supra; Coolidge v. Brown, 286 Mass. 504, 190 N.E. 723, 724; Drain v. Brookline Sav. Bank, 327 Mass. 435, 99 N.E.2d 160, 164. (Cf. Kepner, "The Joint and Survivorship Bank Account  A concept Without a Name." (1953), 41 Ca.L. Rev. 596, pp. 618-619.)
The Massachusetts Court held in Drain v. Brookline Sav. Bank, 327 Mass. 435, 99 N.Ed.2d 160 (1951) that:
There is no merit in the contention of the plaintiff that, even though there was a completed gift, Miss Sullivan could have withdrawn the account during her life and her temporary guardian was likewise entitled to withdraw it. A guardian has no title to the property of the ward. The guardian's authority to use the proceeds of this account was limited by the necessities of the ward. In the absence of any showing that the use of this account was necessary to meet the needs of the ward, the bank was under no duty to pay over to the temporary guardian the whole or any part of it.
In our opinion the reasoning of the Alabama and Massachusetts courts is proper.
Going further, we note the agreement between the deceased Atkins, appellee Sartin, and the bank that is printed on the signature card signed by the depositors which reads as follows:
JOINT ACCOUNTS: It is further agreed that when two or more signatures appear hereon AND the account shall be designated a JOINT account, said joint owners agree, by and between themselves, that all funds now or hereafter deposited in or to this account shall be owned by them as joint tenants with the right of survivorship and not as tenants in common, further that all or any part of said funds may be assigned or withdrawn by them upon the order of either or them during their joint lives. Upon the death of either of them the balance of said funds shall be payable to the survivor as his absolute property and his receipt shall operate as a complete release of the Bank from further liability to either of them, their heirs, executors, assigns or personal representatives.
We hold that before a conservator is permitted to withdraw his ward's funds from a joint account with another, during the life of both, it is necessary for him to secure an order from a chancery court that a certain amount of the funds are required for the ward's necessities. This corresponds with the duty of a guardian as it has existed for a long time. By statute the duties and powers of a conservator and guardian are the same. MCA § 93-13-259 (1972).
In the present case, there is no proof that during the two days of the life of Atkins, after the conservator was appointed, that any attempted withdrawal or withdrawal of any funds was needed for Atkins' necessities. There is some evidence that some of the funds were used for attorney's fees involved in the estate. A conservator could not withdraw funds for that use without a court order in the estate as the conservatorship ceased, as does a guardianship, upon the death of Atkins. We hold, therefore, that the chancellor was correct in granting a money decree to appellee for the amount of the joint account, plus accrued interest.
AFFIRMED ON DIRECT AND CROSS APPEALS.
PATTERSON, C.J., SUGG and WALKER, P.JJ., and BROOM, ROY NOBLE LEE, HAWKINS, DAN M. LEE and PRATHER, JJ., concur.