# IN THE SUPREME COURT OF MISSISSIPPI
## NO. 92-CA-01005-SCT

*IN THE MATTER OF THE ESTATE OF JAMES F. BODMAN, DECEASED: SALLY B. HERRINGTON*

*v.*

*JAMES F. BODMAN, JR.*

| | |
|---|---|
| DATE OF JUDGMENT: | 8/24/92 |
| TRIAL JUDGE: | HON. SEBE DALE, JR. |
| COURT FROM WHICH APPEALED: | FORREST COUNTY CHANCERY COURT |
| ATTORNEY FOR APPELLANT: | M. MCINTOSH FORSYTH |
| ATTORNEY FOR APPELLEE: | ROBERT T. JACKSON |
| NATURE OF THE CASE: | CIVIL - WILLS, TRUSTS AND ESTATES |
| DISPOSITION: | AFFIRMED - 4/25/96 |
| MOTION FOR REHEARING FILED: | 5/9/96 |
| MANDATE ISSUED: | 6/20/96 |

**BEFORE DAN M. LEE, C.J., BANKS AND ROBERTS, JJ.**

**BANKS, JUSTICE, FOR THE COURT:**

¶1. Here we are asked to consider whether a conservator violated her fiduciary duty by sharing a joint tenancy with a right of survivorship with her ward. We conclude that, while there is no per se violation, she did violate her fiduciary duty to the estate in the instant case by depleting the funds from three of the four accounts within the estate for the care of the ward without seeking court permission, while maintaining the funds held within the joint account that she shared with the ward.

## I.

¶2. On July 3, 1978, James F. Bodman, Sr. created a joint tenancy with rights of survivorship between himself and his daughter, Sally B. Herrington through the establishment of a joint certificate of deposit account at First Magnolia Federal Savings and Loan Association. This account was later renewed on April 3, 1981. By 1987, the decedent, James F. Bodman, Sr. had become ill and a conservatorship was established September 25, 1987, with his daughter, Sally B. Herrington serving as conservator of his estate.

¶3. An inventory calculated the value of the money estate to be $56,500 consisting of four certificates of deposit with the Magnolia Federal Savings Bank. One of these certificates was the joint certificate of deposit account shared by the conservator, Herrington and the decedent in the amount of $42,500. The

other three accounts were payable on death to James F. Bodman, Jr., or his children, Paige Bodman and Bhrett Bodman, but were later transferred by the ward and the conservator and made payable on death to the account of the conservator Sally B. Herrington. These accounts were eventually closed and used by Herrington to pay for the expenses of the ward's estate. However, Herrington, as conservator of the estate spent very little from the account she shared with her ward. Rather, the account was allowed to increase in value to the amount of $48,762.33, which Herrington withdrew and transferred to her own account after the fourth and final accounting to the court.

¶4. The decedent wrote a will on November 18, 1987, which bequeathed the funds in his joint checking accounts and certificates of deposit to all of his children to be shared equally. The will also stated that the accounts with rights of survivorship were established for purposes of convenience only and not for the purpose of establishing an ownership interest in the funds by way of survivorship. It provided that the decedent wanted his children to share the responsibility for the administration of his estate and appointed each of them co-executors of his will.

¶5. James F. Bodman, Sr. died on February 23, 1991, and Herrington petitioned to have his will probated in May of 1991. By the time the will had been probated, however, Herrington, as conservator of the Bodman estate, had already presented her fourth and final accounting in the conservatorship to the chancellor on March 11, 1991.

¶6. An order for probate was entered by Chancellor Patterson on May 6, 1991, appointing Herrington as executor. Upon motion of James F. Bodman, Jr., a further order was entered by Chancellor Robert Taylor on June 21, 1991, appointing James F. Bodman, Jr. co-executor of the Bodman estate in accordance with the will of the decedent. Thereafter, James F. Bodman, Jr. petitioned the Chancery Court to have Herrington removed as co-executor alleging that she maintained a conflict of interest while acting as both fiduciary of the estate and co-owner of a joint account with her ward. He further requested that she account for and present to the estate all funds withdrawn from the estate.

¶7. The court responded to this petition by removing both Herrington and James F. Bodman, Jr. as co-executor and appointed F. Marvin Morris, III, the County Probate Administrator, as Administrator of the estate. In its memorandum opinion, the court declared null and void the fourth and final accounting of the conservatorship, the closing of the conservatorship, the discharge of Herrington as the conservator of the estate, and the adjudication of ownership in Herrington of the joint certificate of deposit. The court then distinguished the instant case from this Court's previous decisions involving joint tenancies such as *Strange v. Strange*, 548 So. 2d 1323 (Miss. 1989), by stating that it had not been able to find a case decided by this Court "where the joint tenant . . . occupied a fiduciary relationship by law . . . with her joint tenant" James F. Bodman, Sr.

¶8. Basing its decision on *Dowdy v. Jordan*, 128 Ga.App. 200, 196 S.E.2d 160 (Ga. 1973), the court held that Herrington had violated her fiduciary duty and determined that the joint certificate account shared between the ward and her should be made a part of the property of the ward in its entirety and dealt with as part of the estate. The court also directed her to restore to the estate the $48,762.33 withdrawn by her as conservator under the order of March 11, 1991, together with interest thereon at the rate which would have accrued from the date of withdrawal to the date of restoration. From this judgment, the appellant appeals to this Court asserting the following issues:

**A) WHETHER THE JOINT TENANCY SHARED BETWEEN HERRINGTON AND THE**

**DECEDENT WAS SEVERED BY THE DECEDENT'S WILL; AND**

**B) WHETHER HERRINGTON VIOLATED HER FIDUCIARY DUTY AS CONSERVATOR BY SHARING A JOINT TENANCY WITH THE RIGHTS OF SURVIVORSHIP WITH HER WARD.**

## II.

### a.

¶9. Herrington asserts that the trial court committed error in holding that the joint tenancy shared between Herrington and her late father, James F. Bodman, Sr. was severed by her father's last will and testament. Herrington relies on the cases of *Bishop v. U.S.*, 338 F. Supp. 1336, 1343 (N.D. Miss. 1970), *reh. denied*, 41 F.2d 649 (5th Cir. 1972), *cert. denied*, 409 U.S. 878 (1972); *Strange v. Strange*, 548 So. 2d at 1328, and *Stamper v. Edwards*, 607 So. 2d 1141 (Miss. 1992), which all stand for the proposition that a joint tenancy with rights of survivorship cannot be severed by a contrary disposition in a will.

¶10. Whether a joint tenancy can be severed by a will and whether the appellant violated her fiduciary duty as a conservator are questions of law, which command a relatively broad standard of review by this Court. It is a well-settled principle that the Supreme Court is the "ultimate expositor of the law of this state." *UHS-Qualicare, Inc. v. Gulf Coast Community Hospital, Inc.* 525 So. 2d 746, 754 (Miss. 1987). Therefore, this Court conducts a de novo review on questions of law. *Id.*; *C.E. Tucker v. Hinds County, Mississippi, and Mississippi Power & Light Company*, 558 So. 2d 869, 872 (Miss. 1990).

¶11. Bodman contends that decedent's will, which divides the account between both of his children, should control the disposition of the account. He bases this contention on the notion that the intent of the testator must be carried out where that intent is known. The cases which are cited by the appellee as authority for this contention, however, can all be distinguished from the instant case in that none of them involve a dispute as to whether a joint tenancy should be severed by a contrary disposition of property in a subsequent will.

¶12. It is a well-settled proposition that a "subsequent will does not destroy [a] joint tenancy and does not terminate that tenancy and divest the corpus of it into the estate of the testator." *Strange* at 1328. This Court in *Strange* stated that "chaos would result in banking, commerce and financing . . ." if wills made subsequent to the creation of a right to survivorship were allowed to sever joint tenancies. *Id.* at 1326. There is no dispute in the present case as to the creation of the joint tenancy with rights of survivorship through the establishment of a joint account at First Magnolia Federal Savings and Loan Association on July 3, 1978, and its renewal on April 3, 1981. Furthermore, there is no evidence that James F. Bodman, Sr. was incompetent or unduly influenced to establish this account. Following this Court's previous holdings, Herrington's right to survivorship is unaffected by the decedent's will.

¶13. Bodman also argues that the joint tenancy should be severed because it was established only for the ward's convenience. The making of a subsequent will by the decedent was offered as evidence that the joint tenancy was not created with the "clear intention" to create a right of survivorship. This argument fails also because a court may not consider such parol or extrinsic evidence to give the joint tenancy a meaning other than that apparent from its language. *Cooper v. Crabb*, 587 So. 2d 236, 242 (Miss. 1991) (where this Court held that a chancery court erred in relying on parol or extrinsic evidence in determining that documents creating a joint tenancy in certificates of deposit were created solely for the decedent's

convenience and did not control over the provisions of a will). Thus, Herrington's claim to the account survives Bodman's assertion that the decedent's will severs the joint tenancy with its rights to survivorship.

**b.**

¶14. If the validity of the joint tenancy was the sole issue before this Court, Herrington's claim would prevail. However, the lower court was correct in finding that Herrington's position as the conservator of her joint tenant's estate differentiates the instant case from other cases cited by the appellant which state that the joint tenancy cannot be severed by a subsequent will. In reaching this conclusion, the lower court stated that it "kn[ew] of no pronouncement of law in this State determinative of the precise factual circumstance before it here" and relied upon the Georgia Supreme Court's decision in *Dowdy v. Jordan*, 128 Ga.App. at 200. The court in *Dowdy* held that where a guardian is a joint tenant with his ward with rights of survivorship as to savings accounts, he occupies a conflict-of-interest position and violates his fiduciary duty because he stands to gain personally by preserving the savings accounts and taking the balance as the survivor. *Id.* at 208.

¶15. The court in *Dowdy* further stated that "the validity of the claim standing alone is irrelevant when a breach of fiduciary duty is found, and the fact that the . . . [guardian's joint tenancy] predated the inception of the trust does not relieve him of fiduciary duties in regard to the subject matter of the trust to which he asserts an individual claim." *Id.* at 209. The court expressed that where a trustee finds that he has a property or other interest which conflicts with that of the trust beneficiaries, he has a duty to refuse the trust, resign, or remove the conflicting personal interest. *Id.*

¶16. Other jurisdictions have adopted a similar rationale to that espoused in *Dowdy*. In *Fielder v. Howell*, Kan.App.2d 565, 631 P.2d 249 (Kan.Ct.App. 1981), the Kansas Court of Appeals factually distinguished its case from *Dowdy* and held that "when the estate of the ward is in no way diminished and the apparent conflict of interest does not manifest itself by controlling the guardian's actions, it would seem unduly harsh to make an example of a loyal fiduciary because of a potential, yet unrealized, conflict." *Id.* at 567. Thus, the court in *Fielder*, endorsed a "case-by-case approach" to the determination of "whether the beneficiary of the trust is actually harmed or the trustee is rewarded . . ." by his position which yields conflicting interests. *Id.*

¶17. Herrington has cited *Goldman v. Rubin*, 292 Md. 693, 441 A.2d 713 (Md. 1982) as authority for her assertion that "a fiduciary is not always precluded from positions which allow the possibility of self-dealing with trust property." The situation in *Goldman* involves an instance where a conflict-of-interest arose from the position of personal representatives of an estate who were also the directors of a closed corporation that had the task of selling stock from the estate to the corporation. The court in *Goldman* analyzed the rules of self-dealing as applicable to fiduciary loyalty. Citing *Hughes v. McDaniel*, 202 Md. 626, 632, 98 A.2d 1, 4 (1953), the court in *Goldman* stated that a "trustee is prohibited from placing himself in any position where his self-interest will or may conflict with his duties as trustee, or from using the advantage of his position to gain any benefit for himself at the expense of the beneficiary of the trust." *Goldman*, 292 Md. at 705.

¶18. The court in *Goldman* analyzed this rule as applied to a fiduciary who is both the buyer and the seller in a particular transaction involving his ward's estate. However, the court also stated that where self-dealing is involved, the law does not automatically declare the sale to be "fraudulent in fact" or "absolutely void" unless a party in interest objects to the transaction. *Id.* at 706. The plaintiff must show that there was an

actual violation of the trustee's fiduciary duty. *Id.* at 713. Furthermore, this rule prohibiting self-dealing "does not apply if the purchase is made to protect the interests of the beneficiaries, or if the beneficiaries validly consent, or if they are guilty of laches. . . ." *Id.* at 706. After stating that the burden of proof initially lies with the person who challenges the conduct of the trustee, the court remanded the case back to the lower court for an adjudication under the proper rules pronounced in its holding. *Id.* at 715. Therefore, the court in *Goldman* acknowledged that the fiduciary owed a duty to the beneficiaries of the estate while endorsing a case-by-case approach to determine whether the trustee violated this fiduciary duty.

¶19. Section 93-13-259 Miss. Code Ann. (1972) states that the duties, powers and responsibilities of the conservator are the same as a guardian of a minor. Section 93-13-38 Miss. Code Ann. (1972) states, in pertinent part, that the duty of the guardian of wards is to "improve the estate committed to his charge, and to apply so much of the income, profit or body thereof as may be necessary for the comfortable maintenance and support of the ward and of his family . . . after obtaining an order of the court fixing the amount."

¶20. Although this Court has not directly addressed the issue of a violation of fiduciary duty by a conservator maintaining a joint tenancy with the ward, this Court has analyzed the duty of conservators to marshall the assets of the ward for the purpose of protecting the ward's estate. In *Estate of Holloway v. Holloway*, 631 So. 2d 127 (Miss. 1993), this Court held that Lee Holloway, the executor of his father's estate, violated his fiduciary duty to the estate by allowing the decedent's interest in a joint certificate of deposit, within his possession, to dissipate without protest or legal action to protect the assets of the estate. *Id.* at 135. The Court stated that "[o]ne who is in a fiduciary relationship, as is an executor, owes the fiduciary a high duty of care." *Id.*

¶21. Thus, it would seem that fiduciaries like executors, guardians and conservators have a duty to marshall the assets of the decedent in order to protect these assets. This theory, however, may not hold true for ordinary joint tenancies where the ward is still living. This Court in *Matter of Estate of Atkins v. Sartin*, 422 So. 2d 754 (Miss. 1982), relied on *Howard v. Imes*, 90 So. 2d 818 (Ala. 1956), and held that before a conservator may withdraw funds from an account held jointly by the ward with another, during the life of either, a court order finding that a certain amount is required for necessities must be obtained. *Matter of Estate of Atkins v. Sartin*, at 757. This holding was based on the premise that "a guardian cannot exercise a purely personal elective right of his ward." *Id.* at 756. The "conservator is not the alter ego of the joint depositor and during the life of the depositor the conservator does not have authority to withdraw all of the account funds unless specific sums are needed for his ward's necessities." *Id.*

*¶22.* In another case, *Conservatorship of Kendrick v. Hancock Bank*, 537 So. 2d 888 (Miss. 1989), this Court held that joint tenancies created while the ward was mentally incapacitated and subject to undue influence but predating the conservatorship were subject to being marshalled by the conservator, but those created prior to the period of incapacity were not. *Id.* at 891.

¶23. From these two cases, it is clear that a conservator is not required to marshall ordinary joint tenancies. It follows that ownership of a joint tenancy is not necessarily inconsistent with trusteeship.

¶24. Here, however, a conflict was created by the terms of the will and the actions of the conservator in utilizing only certain assets to meet the necessities of the ward. The terms of the will created a dispute as to the ownership of the joint account based upon the intent of the ward with regard to the creation and disposition of the account, which a trustee may have been called upon to resolve. *See Estate of Holloway*,

631 So. 2d at 127. Herrington spent all of the funds from three of the four accounts within the ward's estate on expenses related to the care of her ward, James F. Bodman, Sr., while saving the money held within the joint account she shared with her ward. The requirement that funds be utilized for necessities presents the issue of whether the conservator should have applied to the court for permission to invade these accounts.

¶25. *Atkins* dictates that a court order is required before invading a joint tenancy. A logical corollary to this mandate is the requirement that the conservator in the instant case obtain court permission before invading the accounts designated by the ward to be given to his son and grandchildren upon his death. In both cases, the ward has expressed his intent in giving another an interest in an account in which he presently maintains an interest. It follows that the conservator has violated her fiduciary duty by neglecting the intent of the ward and unlawfully invading the beneficiaries' accounts.

¶26. As a consequence of the breach of fiduciary duty, the chancellor has decreed that joint account be made a part of the estate. Under the circumstances here presented, that remedy is well within the discretion of the court of equity.

*¶27.* For the foregoing reasons, the judgment of the chancery court is affirmed.

¶28. **AFFIRMED.**

**PRATHER AND SULLIVAN, P.JJ., McRAE, ROBERTS, SMITH AND MILLS, JJ., CONCUR. LEE, C.J., CONCURS IN RESULT ONLY. PITTMAN, J., NOT PARTICIPATING.**