# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2003-CA-02046-SCT

*STEVEN SCOTT HERRING*

*v.*

*EDWARD GRAHAM HERRING, TRUSTEE*

| | |
|---|---|
| DATE OF JUDGMENT: | 8/29/2003 |
| TRIAL JUDGE: | HON. W. HOLLIS McGEHEE, II |
| COURT FROM WHICH APPEALED: | FRANKLIN COUNTY CHANCERY COURT |
| ATTORNEYS FOR APPELLANT: | PAUL M. NEWTON, JR. |
| | JONATHAN FAIRBANK |
| | MICHAEL MADISON TAYLOR |
| ATTORNEYS FOR APPELLEE: | JOHN L. MAXEY, III |
| | MARJORIE SELBY BUSCHING |
| NATURE OF THE CASE: | CIVIL - WILLS, TRUSTS, AND ESTATES |
| DISPOSITION: | AFFIRMED - 11/10/2004 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE SMITH, C.J., CARLSON AND DICKINSON, JJ.**

**DICKINSON, JUSTICE, FOR THE COURT:**

¶1.     Herring Gas Company is a family owned company which was started by C. Graham Herring, with the help of his wife, Eugenie. Graham and Eugenie were the parents of five children: Ed, Rebecca, Marsha, Steve and Mike. Ed is the oldest, and Steve is the fourth child.

¶2.     Ed became involved in the business in the early 1970's. When Graham died in the spring of 1974, Eugenie began to do estate planning beginning with her first inter vivos trust, "Eugenie Teague Herring Irrevocable Trust," created on October 14,1983.

¶3.    On September 15, 1989, Eugenie created a revocable trust, named "Eugenie Teague Herring Family Trust," and she executed her Last Will and Testament. The 1989 trust was amended twice, first on October 10, 1989, and again on June 9, 1993.

¶4.    On July 21, 1992, Eugenie created an Irrevocable Trust Agreement named "Eugenie Teague Herring Irrevocable Trust No. 2" ("Trust No. 2") which listed Steve as the sole beneficiary. It is this trust which is the subject of this appeal.

¶5.    On December 24, 1992, Eugenie created the "Eugenie Teague Herring Irrevocable Trust No. 3." Thus, when Eugenie died on June 9, 1998, she had four trusts:

1.    "Eugenie Teague Herring Irrevocable Trust."

2.    "Eugenie Teague Herring Family Trust."[1]

3.    "Eugenie Teague Herring Irrevocable Trust No. 2."

4.    "Eugenie Teague Herring Irrevocable Trust No. 3."

¶6.    Ed was named the executor of Eugenie's estate, as well as trustee of all four trusts. At that time, Ed was also the president and director of the Herring Gas Company.

¶7.    A dispute arose between Ed and Steve regarding one of the trusts. Until the death of their mother, Steve was given $1,000.00 per month from her.[2] At Steve's request, Ed increased this to $2,000.00 per month. However, when Steve requested another increase in monthly disbursements, Ed, as trustee, refused.

---

[1]This trust was amended twice, first on October 10, 1989, and again on June 9, 1993.

[2]At around age twelve or thirteen, Steve and his father were involved in an automobile accident in which Steve suffered a serious head injury.

2

¶8. On August 10, 2000, Ed filed a declaratory action, requesting that the court declare that the various actions he had taken as trustee were consistent with the provisions of the trust.

¶9. Trust No. 2 owned 1,927 shares of stock in Herring Gas Co. Article II of Trust No. 2 provided, inter alia:

> B. After the death of the Creator and the completion of the administration of her estate and the discharge of her Executor, the *assets of this trust shall be paid over, delivered or conveyed to or among such appointee or appointees, and in such proportions as EDWARD GRAHAM HERRING shall appoint*. Such appointment by EDWARD GRAHAM HERRING shall be to or for the benefit of such descendants of the Creator or trusts for their benefit *as he alone in all events shall determine*, except that EDWARD GRAHAM HERRING may not appoint to himself, his estate, his descendants, his creditors, or the creditors of his estate and may not appoint to the Creator, the Creator's estate, the Creator's creditors, or the creditors of the Creator's estate.

¶10. Pursuant to this provision, on July 8, 2001, while the declaratory judgement action was pending, Ed executed a Limited Power of Appointment in which he "appointed" 1,689 1/3 shares of 1,927 shares of stock held by Trust No. 2, to Mike and Marsha, giving them each 844 2/3 shares. Unhappy with Ed's decision to transfer the shares from Trust No. 2, in which he was sole beneficiary, Steve filed a counterclaim alleging Ed breached his fiduciary duty as trustee.

¶11. The chancellor granted Ed's motion for summary judgment on Steve's counterclaim, holding that Ed was within his authority to make the appointment of stock held by Trust No. 2, and that his actions were in accordance with the trust provisions.

¶12. Believing the chancellor erred in granting Ed's motion for summary judgement, Steve appeals and asks us to address the following three issues:

3

1.  Whether the trial court erred by not applying the restrictions of Miss. Code Ann. §§ 91-9-107 (2), and 91-9-111.[3]

2.  Whether the trial court erred by not applying *Estate of Bodman v. Bodman*, 674 So. 2d 1245 (Miss. 1996) to limit the trustee's discretion.

3.  Whether the trial court erred in granting summary judgment in light of *Johnson v. City of Cleveland*, 846 So. 2d 1031 (Miss. 2003).

## ANALYSIS

¶13.    As creator of Trust No. 2, Eugenie, gave Ed discretion to distribute the assets of Trust No. 2.  Originally, the only asset of Trust No. 2 was a life insurance policy.   Eugenie's strategy was discussed at the motion for reconsideration hearing on August 5, 2003:

> The stock was originally in the family trust.  This Irrevocable Trust 2 had the authority to buy as much of the stock as was necessary to exhaust the insurance policies to pay the estate tax.  What was in the Irrevocable Trust wasn't subject to federal estate tax, and that was the mechanism to get cash into the estate so the stock that didn't get purchased by [Trust] II remained in the family trust and did go to Steve . . . .   Steve received stock from two separate places.  He received all of the family trust stock and by virtue of the power of appointment received a third of what was in Irrevocable [Trust] II.

¶14.    Therefore, after Eugenie's death, the proceeds from the life insurance policy held in Trust No. 2, were used to purchase 1927 of the 2534 shares of stock which was held in the family trust.  Steve received the remainder stock from the family trust, and he was the sole beneficiary of Trust No. 2, which held the 1927 shares of stock purchased from the family trust.  Since he was the sole beneficiary of Trust No. 2, Steve claims Ed should not have used his power as trustee to transfer the shares from Trust No. 2, to Mike and Marsha.

¶15.    However, as stated supra, Article II of Trust No. 2 provided, inter alia, that

---

[3]This issue is a combination of two issues presented by Steve.

4

the *assets of this trust shall be paid over, delivered or conveyed to or among such appointee or appointees, and in such proportions as EDWARD GRAHAM HERRING shall appoint*. Such appointment by EDWARD GRAHAM HERRING shall be to or for the benefit of such descendants of the Creator or trusts for their benefit *as he alone in all events shall determine*, . . .

* * *

In default of the effective exercise of the power of appointment by EDWARD GRAHAM HERRING as to any portion of this trust, the Trustee shall distribute such unappointed assets of this trust to STEVEN SCOTT HERRING with the descendants of STEVEN SCOTT HERRING to take   per stirpes such assets if STEVEN SCOTT HERRING is not then living.

(emphasis added).

¶16.    Steve contends that even though this provision granted Ed the discretion to transfer the shares, his powers were limited by Article V. of the Trust Agreement, which provides:

Except as otherwise herein expressly provided, the administration and management of the trust herein created, the sale and conveyance of the trust assets, the investment and reinvestment of trust assets, and the rights, powers, duties and liabilities of the Trustee shall be in accordance with and governed by the terms and provisions of the Uniform Trustees' Powers Law of Mississippi (being Section 91-9-101 and following of the Mississippi Code of 1972) as it now exists or may hereafter be amended.  However, in addition to the powers contained in that Law the Trustee shall have full power and authority.

*Miss. Code Ann. §§  91-9-107 (2) and 91-9-111.*

¶17.    Steve argues that even though Trust No. 2 granted Ed the discretion to change the disposition of the trust assets, pursuant to Article V, Ed was limited to the restrictions provided in Miss. Code Ann. §§  91-9-107 (2) and 91-9-111.  We agree.

¶18.    Miss. Code Ann. § 91-9-107 (Rev. 2004) provides in part:

(1) From time of creation of the trust until final distribution of the assets of the trust, a trustee has the power to perform, without court authorization, every act which a prudent man would perform for the purposes of the trust, including, but not limited to:

(a) The powers specified in subsection (3) of this section, and

(b) Those powers, rights and remedies set forth in Section 91-9-9, related to compliance with environmental laws affecting property held by fiduciaries. The provisions of this paragraph (b) shall stand repealed from and after July 1, 2008.

(2) In the exercise of his powers, including the powers, including the powers granted by this article, a trustee has a duty to act with due regard to his obligation as a fiduciary.

¶19. Miss. Code Ann. § 91-9-111 (Rev. 2004) provides:

This article does not affect the power of a court of competent jurisdiction, for cause shown and upon petition of the trustee or affected beneficiary and upon appropriate notice to the affected parties, to relieve a trustee from any restrictions on his power that would otherwise be placed upon him by the trust or by this article.

If the duty of the trustee and his individual interest, or his interest as trustee of another trust, conflict in the exercise of a trust power, the power may be exercised only by court authorization (except as provided in section 91-9-107(3)(a), (d), (f), (r), and (x) upon petition of the trustee. Under this section, personal profit or advantage to an affiliated or subsidiary company or association is profit to any corporate trustee.

¶20. Thus, Miss. Code Ann. § 91-9-107 generally allows the trustee to act without court authorization; however, Miss. Code Ann. § 91-9-111 mandates that the trustee petition for court authority prior to exercising a trust power which conflicts with his individual interest or his interest as trustee of another trust.

¶21. Steve contends that Ed breached his fiduciary duty as trustee when he transferred the stock to Mike and Marsha on July 8, 2001, without court approval, because of his conflicts of interests. Steve contends that Ed had a "prearranged purchase agreement" and Ed's discretion as trustee in the disposition of the trust assets conflicted with his individual interests. Steve

6

alleges this because sometime after November 2002, Marsha sold some of the "transferred" stock to Ed at $300.00 per share.

¶22. The trial court held that "Steve's contention that Ed had essentially prearranged a purchase with Marsha and/or Mike is not supported by any evidence before the Court in the form of deposition testimony or sworn affidavits. The only thing the Court has before it on this question is Ed's testimony that he did in fact have a standing offer to Steve, Marsha and Mike to buy any stock they owned for a set price of $300 per share."

¶23. During his deposition, Ed testified that he was "not really sure that [he] had serious discussions with either Steve or Michael about purchasing their stock at a value, prior to July the 8th, other than telling them that [he] was always willing to buy their stock" and that he was "not sure that a per dollar number was discussed prior to that appointment." He further stated that he had "an offer to [his] brother and -- other brother and sister, Michael and Marsha, any time they want to sell their shares [he's] willing to purchase their shares at $300."

¶24. Ed argues that the statutes do not apply to the limited power of appointment because his exercise of the limited power of appointment was done so by the terms of the trust but the appointment itself was done in Ed's individual capacity.

¶25. At the motion for reconsideration hearing, it was stated by counsel for Steve:

Your Honor, looking back at [Miss. Code Ann. § 91-9-107] actually it expresses a general duty in the exercise of his powers, including powers granted by this article, a trustee has a duty to act with due regard to his obligations as fiduciary. The first part of this announces the prudent man standard. In other words, the creation of a three-paragraph instrument doesn't wipe away the case law. It doesn't alter settled law, or statutes regarding conflict of interest of fiduciaries. There is not one who is empowered to make private law be it in a will or trust which authorizes the code to be dispensed with, except, in the code sections where the code provides that particular duties, inventories, accountings, things

7

like that, may be waived. But again, it's incumbent on the party exercising the fiduciary capacity to come to the court and have those things waived. So we respectfully submit that the creation of all these instruments with any number of duties placed on Mr. Herring, individually, corporately, as a shareholder, as a director, as an executor, as a trustee of numerous trusts put [him] in a very difficult position, Your Honor. However, this court offered Mr. Herring an opportunity to remove himself from this conflict prior to the exercise of the power of appointment. He's chosen to remain as executor, as a trustee, as a majority shareholder and it's been a very - I would submit that it's a very perilous course that he's embarked on and making these very important decisions without leave of the court, without seeking guidance from the court with regard to his fiduciary obligations.

¶26. In essence, Steve argued that even though § 107 expressed the general duty of a trustee, and the trust gave Ed the power to exercise a limited power of appointment, such appointment "doesn't wipe away the case law" and can't be exercised without the court's approval, if there is a conflict of interest between the discretion of the trustee and the trustee's individual interest. We agree that Ed's power of appointment was limited by the statutes and case law which address the duties of a trustee. Therefore, if there was a conflict of interest between Ed, as trustee exercising the power of appointment, and his individual interests, Ed was required by statute to seek court approval, prior to the transfer of stock. Steve's argument that Ed had a conflict of interest.

¶27. Steve claims that, with respect to the transactions, Ed was a shareholder, executor, trustee, and an individual. Steve recognizes that we have not addressed the limiting effect of Miss. Code Ann. § 91-9-111, and that Miss. Code Ann. § 91-9-119 (Rev. 2004) gives special deference to decisions of other jurisdictions which states:

> This article shall be construed to effectuate its general purpose to make uniform the law of those states which enact a statute containing substantially the same provisions as herein contained.

8

¶28.    Steve cites ***Wiggins v. PNC Bank, Kentucky***, ***Inc.***, 988 S.W.2d 498 (Ky. Ct. App. 1998), which addressed the effect of KRS § 386.820 (2), a statute with the same language as Miss. Code Ann. § 91-9-111.  In ***Wiggins***, the court stated:

> Generally, a trustee owes the duty of *'uberima fides*, or utmost fidelity' to the beneficiaries of a trust. . . . [A] conflict of interest exists in [a] 'situation in which regard for one duty tends to lead to disregard of another.'. . . The action taken by [the trustee] . . . presented a clear conflict of interest for [the trustee] as it could not act with 'utmost fidelity' toward the remainder beneficiaries of both trusts.  Court authorization pursuant to KRS § 386.820 (2) was required before the power of encroachment could be exercised.
>  . . .
> While [the trustee] had discretion under Mrs. Schlegal's will to invade the principal of the Schlegal trust for Verna's benefit, such power was restricted by the terms of KRS § 386.820 (2) which allows a trust power to be exercised only with court approval where the duty of the trustee conflicts with the exercise of the trust power.

***Wiggins***, 988 S.W.2d at 501 (citations omitted).

¶29.    Steve contends that Ed's then-pending litigation against Steve, coupled with the transfer of Trust No. 2 stock to Mike and Marsha and the subsequent purchase of some of the "transferred" stock leads a fortiori  to the conclusion of a conflict of interest between Ed, personally, and as trustee of Trust No.2.

¶30.    Furthermore, Steve contends that the transfer of the stock conflicts with Ed's duties as trustee of Trust No. 1, Trust No. 3 and the family trust, all of which provide Steve as a beneficiary.

¶31.    Although we agree with Steve's interpretation of Miss. Code Ann. § 91-9-111 and the application of ***Wiggins***, we find the argument to be inapplicable because of the absence of a conflict of interest.

¶32.    When the matter was addressed before the trial court, it held:

9

The question before this Court is not whether the Court would have exercised the appointment as Ed did; not whether the Court thinks that the appointment was consistent with Mrs. Herring's 1989 wishes or dictates, and not whether the Court believes that it was appropriate or necessary to "equalize" the stock between Steve, Mike and Marsha. The Court notes again that Trust No. 2 was created long after the 1989 will and trust and Trust No. 2 gave Ed the specific authorization to do exactly what he has done. So, the Court cannot say that Ed violated his fiduciary duties to Steve. Based upon the record before the Court and the statute of this matter, Ed Herring, as Trustee of the No. 2 Trust and any other trusts that might still be involved, is entitled, as a matter of law, to a judgment dismissing Steve's Counterclaim.

¶33. The standing offer by Ed to purchase shares of stock was made to all family members who owned stock, and it was made prior to the execution of the limited power or appointment. The trial court found no evidence of a prearranged deal between Ed and any other family member. Pursuant to Article II of Trust No. 2, Steve was not guaranteed any inheritance from this trust. The appointment of shares of stock was at Ed's discretion. Ed made the decision to exercise his discretion and split the shares up between Steve, Mike and Marsha.

¶34. Furthermore, the evidence indicated that Ed transferred the stock to Mike and Marsha so that Steve, Mike and Marsha would own an equal number of shares in the company. Long after Ed, acting as trustee, transferred the shares, Marsha decided to take Ed up on his standing offer, and sell him 400 of her shares. Again, there is no evidence that Ed's transfer of shares to equalize the number of shares held by Steve, Mike and Marsha, was in any way connected to Ed's purchase of shares from Marsha, which took place a year and a half later. Thus, if Ed's uncontroverted testimony is believed – and apparently it was by the chancellor – Ed would not have known to seek court approval, because he did not know that Marsha would decide to sell him her shares a year and a half later.

¶35. Ed had the express authority to distribute the shares "to or among such appointee or appointees, and in such proportions as Edward Graham Herring shall appoint." The only limitation expressed by Eugenie was that the appointment "be to or for the benefit of such descendants of the Creator or trusts for their benefit as he alone in all events shall determine, except that Edward Graham Herring may not appoint to himself, his estate, his descendants, his creditors' or the creditors of his estate and may not appoint to the Creator, the Creator's estate, the Creator's creditors, or the creditors of the Creator's estate."

¶36. Looking at the transfer itself, Ed did exactly what he had the authority to do and there was no conflict of interest with the transfer of the stock to Mike and Marsha. There is no evidence that Ed received any "reward" by transferring shares to any particular person. To the contrary, it appears Ed did exactly what his mother wished him to do.

¶37. We therefore find that Ed was not required to petition the court pursuant to Miss. Code Ann. § 91-9-111 for approval of the transfer of shares from Trust No. 2, to Mike and Marsha. Thus, the trial court did not err in finding no conflict of interest and that Ed did not breach his fiduciary duty to Steve.

Limitation of discretion: *Estate of Bodman v. Bodman*.

¶38. Steve cites *Estate of Bodman v. Bodman*, 674 So. 2d 1245 (Miss. 1996), claiming its holding limited Ed's discretion. In *Bodman*, this Court analyzed the fiduciary duty of a conservator when she shared a joint tenancy with the rights of survivorship with her ward. *Bodman*, 674 So. 2d at 1247. In looking at cases from other jurisdictions, we recognized the duty of an executor to marshal the assets of the decedent in order to protect the assets, and we

11

extended that duty to guardians and conservators. *Id.* at 1250. We affirmed the trial court's finding of a breach of fiduciary duty. *Id.*

¶39. Steve urges us to apply *Bodman* here. It is true that this Court cited *Dowdy v. Jordan*, 196 S.E.2d 160 (Ga. Ct. App. 1973)[4] which "expressed that where a trustee finds that he has a property or interest which conflicts with that of the trust beneficiaries, he has a duty to refuse the trust, resign, or remove the conflicting personal interest." *Bodman*, 674 So. 2d at 1249. Then this Court stated:

> [T]he Kansas Court of Appeals factually distinguished its case from *Dowdy* and held that "when the estate of the ward is in no way diminished and the apparent conflict of interest does not manifest itself by controlling the guardian's actions, it would seem unduly harsh to make an example of a loyal fiduciary because of a potential, yet unrealized, conflict." [*Fielder,* 6 Kan.App.2d] at 567, 631 P.2d 249. Thus, the court in *Fielder*, endorsed a "case-by-case approach" to the determination of "whether the beneficiary of the trust is actually harmed or the trustee is rewarded . . ." by his position which yields conflicting interests. *Id.*

*Bodman*, 674 So. 2d at 1249.

¶40. Steve contends that he suffered harm from Ed's transfer of some of his inheritance and Ed was rewarded by his transfer of the stock because Ed was strengthened by his later purchase of some of the transferred stock. This, Steve claims, diminished his ability to become a corporate director or officer. Steve contends that Bodman limited Ed's "power of appointment" because of Ed's fiduciary responsibilities to Steve.

¶41. In addressing this issue, the trial court stated:

---

[4]The *Bodman* trial court relied on *Dowdy* when it held there was a violation of a fiduciary duty. *Bodman*, 674 So. 2d at 1247.

> Steve contends that Ed has violated his duties to him. For that claim, Steve relies primarily on **Bodman v. Bodman**, 674 So. 2d 1245. This Court does not find the ruling in **Bodman** to be controlling here. **Bodman** involves a person serving as a co-executor who previously served as conservator for the decedent. It further involves claims of conflict of interest based on joint accounts between the co-executor and former conservator at a time when she was serving in that capacity. Here, Ed Herring acted specifically in accordance with the trust document appointing him. That same trust document gave Ed sole discretion to determine who to appoint assets to. With only the evidence presented, the depositions, affidavits, pleadings etc. [] This Court finds that **Bodman**, to the extent it is applicable, does not dictate a different result than the ruling contained herein.

We find no error in the chancellor's reasoning. Ed was not rewarded by the mere transfer of the shares to Mike and Marsha. Steve, Mike or Marsha were always free to sell any number of their shares to Ed. Marsha owned 1,600 shares, and she elected to sell 400 of them to Ed. Ed may, or may not, have benefitted by the purchase of shares from Marsha. But the purchase took place long after the transfer of shares from Trust No. 2, and there is no evidence of any connection in the two transactions, and more importantly, no evidence of any prearranged agreement between Ed and Marsha.

### *Johnson v. City of Cleveland.*

¶42. Under M.R.C.P. 56(c), summary judgment may be granted "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."

¶43. Steve claims that our holding in *Johnson v. City of Cleveland*, 846 So. 2d 1031 (Miss. 2003), precluded summary judgment because, although certain facts may be undisputed, they are capable of two interpretations. In addressing this issue, the trial court stated:

13

The language in the trust documents is not ambiguous or subject to different interpretations. Mrs. Herring clearly stated in her 1989 will and trust of the same date, that she wanted Steve to have her Herring Gas stock. However, it is just as clear that in the No. 2 Trust, created by Mrs. Herring some three years later in 1992, Mrs. Herring gave Ed, and Ed alone, the discretion and authority to appoint any part or all of the assets in Trust No. 2 to any one of her descendants other than Ed or his immediate family. This is exactly what Ed did. As stated elsewhere, it is not a question of whether Ed's appointment is the same appointment this Court or anyone else would make. In fact, according to the provisions of Mrs. Herring's No. 2 Trust, it doesn't even matter if she would have disagreed, the appointment discretion is granted to Ed and Ed alone. . . .

¶44. On motion for reconsideration, the trial court stated:

The issues raised by counsel for Steve have essentially reargued those matters previously submitted. The one concern that I now have relates to the citation by Mr. Taylor of the case of *Johnson v. City of Cleveland*, 846 So. 2d 1031. In that opinion, as well as some prior thereto, the Mississippi Supreme Court has employed to the following language to supplement the traditional "no genuine issues of material fact":

"Summary Judgment is inappropriate where there are undisputed facts which are susceptible to more than one interpretation."

Having reviewed my prior ruling, I am still satisfied that there are no genuine issues of material fact. The only question that now enters my mind is whether those undisputed facts are susceptible to more than one interpretation. . . .

This Court's ruling is that Ed has done that which he was directed to do. The mere fact that he had choices among heirs as to whom he would appoint stock to does not, in and of itself, establish a conflict or appearance of a conflict nor an interpretation of an appearance of a conflict. Again, Steve relies on his conclusory allegations that Ed had a "prearranged" deal with the other heirs to buy their stock and therefore it may be that it was a violation of his fiduciary duty to Steve. However, Ed readily admitted that he had a standing offer to all of his family to purchase their stock at anytime. Such an admission is not, without any other evidence to support it, subject to an interpretation that Ed had a "pre-arranged" agreement to purchase stock from other family members. Based upon the only evidence that Court has before it, such was simply a standing offer, nothing more, nothing less.

Therefore, considering all of the matters above and all other matters discussed, argued and/or briefed, the Court concludes that its prior opinion was correct and

the Court finds the motion of Steve to set aside the prior ruling is not well founded.

With respect to this issue, we cannot improve upon the chancellor's analysis.

## CONCLUSION

¶45.    We find the assignments of error to be without merit, and we therefore affirm the judgment of the chancery court.

¶46.    **AFFIRMED.**

**SMITH, C.J., WALLER AND COBB, P.JJ., EASLEY AND CARLSON, JJ., CONCUR.  DIAZ, GRAVES AND RANDOLPH, JJ., NOT PARTICIPATING.**