548 So.2d 1323 (1989)
In re WILL AND ESTATE OF Ernest Donald STRANGE, Deceased.
William Morris STRANGE
v.
Tyna Strange, Executrix.
No. 07-58715.
Supreme Court of Mississippi.
September 13, 1989.
T. Mark Sledge, Jackson, for appellant.
C.A. Henley, Jr., Jackson, for appellee.
Before ROY NOBLE LEE, C.J., and ANDERSON and BLASS, JJ.
ROY NOBLE LEE, Chief Justice, for the Court:
William Morris Strange has appealed from a judgment of the Chancery Court, First Judicial District, Hinds County, Mississippi, adjudicating that a purported joint account with Merrill Lynch created by Ernest Donald Strange in his lifetime in favor of William Morris Strange, his son, was the subject of an implied trust with William Morris Strange as trustee, and that the funds should be paid into the Estate of Ernest Donald Strange and distributed according to the provisions of his last will and testament, i.e., payment of claims and expenses and distribution of the residue to *1324 beneficiaries under the last will and testament of Mr. Strange.

Facts
Ernest Donald Strange was an attorney who had been employed as an Assistant U.S. Attorney for over twenty (20) years at the time of the events which are the subject of this appeal. He was married to Tyna Yates Strange, his third wife, and had three adult offspring by his first wife, i.e., Ernest Donald Strange, Jr., Carol Jean Strange Medlin, and William Morris Strange (Morris Strange).
On October 10, 1981, Strange opened a joint account with Merrill Lynch in his name and the name of his son Morris.[1] Nine months after opening the joint account, on July 23, 1982, Don Strange executed a will which purported in Paragraph VI to dispose of the funds in the Merrill Lynch account:
I will, devise and bequeath to my wife, Tyna, and my son, William Morris Strange, and my daughter, Carol Jean Strange Medlin, to share and share alike, all savings and checking accounts that are in my name and all investments in my name and Morris' name at Merrill Lynch.
The parties agreed that, at all relevant times, Don Strange was fully capable of understanding the documents prepared and the transactions which occurred. Strange died on December 27, 1983. Tyna Strange, wife of the decedent, was named as executrix of her husband's will and she was assisted by Morris Strange in opening and administering the affairs of the estate. Shortly after the estate was opened, Morris Strange had the Merrill Lynch account changed to his name only and paid four thousand seven hundred fifty-one dollars ($4,751.00) (representing 1/3 of the value of the account), under the terms of Paragraph VI of the will, to Tyna Strange. He thought at the time that the law required him to give 1/3 of the value of the account to Tyna Strange and 1/3 to his sister, Carol Jean Strange Medlin.
Before distributing any money to his sister, he consulted a lawyer who advised that the money in the account belonged entirely to him because the account was set up in a joint tenancy with right of survivorship.
On March 25, 1985, Tyna Strange, executrix, filed a petition to pay all probated claims and other expenses, discharge executrix, and close the estate. The estate was insolvent and Tyna Strange requested the court to require that Morris Strange, Carol Jean Strange Medlin, and Tyna Strange, contribute equal sums to pay claims and costs of administration. Tyna Strange's testimony and appellate brief make it apparent that the Merrill Lynch account was the only funded account named in the will and that Tyna Strange wanted those funds put into the estate and wanted the bequests from the account abated proportionately as necessary to pay the claims and expenses of the estate.
Morris Strange answered Tyna Strange's petition denying responsibility for contributing funds and cross-claimed for reimbursement of the money he had paid to Tyna Strange from the account he held jointly with the decedent (or alternatively for "credit against any assessment of bills due and owning by the Estate.") Morris Strange's cross-claim asserted that the decedent had "opened a bond account at Merrill Lynch ... and established this account as a joint account with rights of survivorship with W. Morris Strange as evidenced by Exhibit "A" attached hereto." The exhibit was not included in the record on appeal. The case went to trial on May 22, 1987, in the Chancery Court of the First Judicial District of Hinds County.
There was no evidence adduced at trial to indicate that there was any lack of competence or legal capacity on the part of Strange at the time he set up the joint account. Nor was there any evidence (or even allegation) that his actions were the *1325 result of undue influence or duress. There was evidence that the marriage was turbulent and combative and that Strange had told Morris he was changing his will in response to pressure from his wife. Morris Strange testified that his father reported he had changed the will but that "it meant the same damn thing."
There was evidence that three other gifts were allowed to pass outside the estate: (1) insurance policies for $12,000 with Tyna Strange as beneficiary; (2) an insurance policy for $175,000 with the three children as beneficiaries; (3) a joint credit union account for $1,005.00 (not specifically named in the will) in the name of Tyna and Donald Strange, which Tyna withdrew and used to voluntarily retire some of the claims against the estate.
The chancellor entered judgment ordering the legatees under Paragraph VI of the will to pay the amount received from the Merrill Lynch account into the estate to be used for paying claims and expenses for administration of the estate. He ordered that any funds remaining after paying estate claims and expenses be divided equally in accordance with Paragraph VI of the will.

Law
The sole question on this appeal is whether or not the lower court committed reversible error in ruling that the joint account with rights of survivorship opened by the decedent, Ernest Donald Strange, in his name and that of his son, Morris Strange, was void due to the fact that the creation of the joint account did not meet the criteria for a valid inter vivos gift and thereby setting aside the creation of the joint account.
The parties have not cited, nor do we find, any Mississippi case dealing with the precise issue presented by this appeal, i.e., whether a testator can, by will, dispose of property which he placed, during his lifetime, in a validly created joint tenancy account with rights of survivorship. Joint accounts with survivorship provisions are widely relied upon as will substitutes along with other will substitutes such as life insurance, pension plans, etc. Therefore, the impact of today's decision is of great importance to the citizens of this state, as well as banking and commercial institutions.
The learned chancellor ruled that the question before him was whether the joint account created an inter vivos gift from Ernest Strange to Morris Strange, his son, or whether the decedent's will dated July 23, 1982, determined the ownership of said account. The chancellor based his decision on Carter v. State Mutual Federal Savings & Loan Ass'n, 498 So.2d 324 (Miss. 1986). The chancellor stated in his opinion:
As stated in the Carter case, several requirements must be met in order to make a valid inter vivos gift, to-wit: (1) the donor must be competent to make the gift, (2) there must be a free and voluntary act by the donor with the intention to make a gift, (3) the gift must be complete with nothing left to be done, (4) there must be delivery by the donor and acceptance by the donee, and (5) the gift must be gratuitous and irrevocable. Going further, in defining delivery, the Supreme Court stated that to perfect delivery, the donor must surrender all dominion and interest in the property.
It is obvious that several of the above listed requirements had not been met, with emphasis being placed on the requirement of delivery and acceptance. Further emphasis is placed on the requirement that the gift must be gratuitous and irrevocable.

It is obvious to the Court that the Decedent continued to retain control over the account as would enable him to withdraw it for his own personal uses or purposes. By retaining such control, the transaction was ineffective as a gift and the deposit remained the property of the depositor.
This Court is unable to ascertain the Decedent's purpose in establishing the subject joint account, although it appears that he had done likewise using the same funds on previous occasions to establish one or more joint accounts bearing names other than that of Morris Strange. *1326 The fact that subsequent to the creation of this account, Decedent specificially made reference to the account in disposing of same in his will leads this Court to conclude that he never intended to comply with the above listed five requirements necessary to make a valid inter vivos gift.
Accordingly, this Court is of the opinion that an implied trust has been created, with Morris Strange acting as Trustee. The funds in question properly belong to the Estate of Donald Strange, Deceased, and a judgment will be entered ordering the Trustee, Morris Strange, to pay over said funds to said Estate for administration purposes.
We distinguish Carter from the case sub judice. In Carter, Bessie Thomas had opened accounts at State Mutual in the name of several of her relatives and had subsequently used these accounts as collateral for notes held by State Mutual. When the named account holders were unsuccessful in attempts to withdraw funds because the accounts were serving as collateral, they instituted suit against State Mutual claiming the association had no authority to allow Thomas to use the accounts as collateral. This Court found that there had been no valid inter vivos transfer to the named account holders because Thomas had not "surrender[ed] all dominion and interest in the property." There was nothing in Carter to indicate that the accounts there were joint accounts with right of survivorship involved. Gilder v. First National Bank of Greenville, 214 So.2d 681 (Miss. 1968) (a gift of money by check is revoked by death of maker if check not cashed before maker's death), and Smith v. Taylor, 183 Miss. 542, 184 So. 423 (1938), are likewise distinguished from the case sub judice.
The five (5) requisites of a valid inter vivos gift set forth in Carter and quoted by the chancellor hereinabove do not necessarily apply to a joint tenancy with rights of survivorship. The vehicles differ. For instance, the creator of a joint tenancy with rights of survivorship does not relinquish control of the account, but, rather, divides control with the joint tenant. Each joint tenant manifests a strong interest therein so long as he lives. Immediately at the death of one joint tenant, the decedent's interest vests at that time in the other joint tenant(s).
Myriad joint tenancy accounts in banking and savings institutions, mutual funds, stock certificates, and practically all similar types of monetary and business transactions are in existence in the State of Mississippi. The case sub judice affects them and they extend into, and affect, commerce in other states. Chaos would result in banking, commerce and financing, if the decision of the lower court was affirmed as the law. Simply, it cannot be the law in this case or similar cases involving the same or like issues. In Leverette v. Ainsworth, 199 Miss. 652, 23 So.2d 798 (1945), the Court, speaking through Justice Virgil Griffith, said:
It is equally well settled that a person may make a gift in joint tenure by making a deposit of the subject gift in a bank in such a manner that it shall stand to the credit, as joint owners, of the donor and the donee, as where, for illustration, John Doe makes a deposit to the credit of "John Doe or Richard Roe," which under the statute, Section 5205, Code 1942, Section 3809, Code 1930, would raise the presumption that the deposit was intended to be in joint ownership, and by the further force of the statute, subject to withdrawal by either of the joint owners. Precise form is not essential if and when formal deficiencies are supplied by definite proof; so that when the facts, well proved, are sufficient to disclose that there was a clear intention to create a right which embraces the essential elements of joint ownership and survivorship in respect to the particular bank deposit, or account, the intention so proved will be given effect and the survivor held entitled to the fund. Stephens v. Stephens, 193 Miss. 98, 8 So.(2d) 462, In Re: Lewis' Estate, 194 Miss. 480, 13 So.(2d) 20.
199 Miss. at 657, 23 So.2d at 799.
In In Re: Lewis' Estate, 194 Miss. 480, 13 So.(2d) 20 (1943), Justice McGehee set *1327 forth the rationale for honoring the intention of the creator of a joint tenancy with the following discussion:
A joint ownership of a deposit is created when it clearly appears to have been the intention of the original owner to divest himself of the exclusive ownership and control of the money and vests such ownership and control jointly in himself and another with the attendant right of survivorship. The intention to make a present gift of a joint interest in such a deposit may appear in the statement of the depositor to the bank, or it may be shown by his accounts and the attendant circumstances. Change of a bank deposit standing in the name of an individual, to the joint account of the depositor and another, may operate as a present and completed gift in joint ownership if the original depositor clearly intended such a result, and the gift of an interest in the deposit, though not ripening into full ownership until the death of the donor, is not testamentary in character, but creates a joint tenancy therein if the depositor intended to vest a joint interest and ownership in such other person in praesenti when establishing such joint account: and it is immaterial in such case whether the fund originally belonged exclusively to the depositor or belonged to him and the other jointly. The fact that the funds may have belonged to the depositor at the time such a deposit is made is persuasive in determining whether he opened the joint account merely for convenience to enable the other person to check on the same for his benefit or intended to create a joint tenancy therein, but such fact of sole ownership by the depositor is not conclusive of the right of survivorship in a deposit made under such circumstances. In the case of Splaine v. Morrissey, 282 Mass. 217, 184 N.E. 670, 671, where it appeared that deceased had his bank accounts transferred from his name to the joint name of himself and his wife, it was said: "We interpret the findings of the judge to mean that the deceased made a present gift to his wife, not of the deposits themselves, but of such interests therein as are implied from the terms of the deposit upon which they were held by the banks. Such a gift could be effected in accordance with the principle applied in the case of Chippendale v. North Adams Savings Bank, 222 Mass 499, 111 N.E. 371... ." And, as heretofore shown, the principle applied in Chippendale, supra, was that the person whose name was added when the deposit was changed from the name of Williams, who owned the money, to the joint account was that the person whose name was added "became the owner of the balance undrawn by virtue of the contract of deposit, not by virtue of a gift which took effect on Williams' death;" that is to say, the rights of the co-beneficiary were not dependent upon whether Williams had surrendered complete control of the funds during his lifetime, but, rather upon the contract whereby he had established a joint tenancy in the fund during their joint lives, with the balance to be withdrawn by and belong to the survivor. Moreover, it is obvious that for a depositor to surrender the exclusive control and possession of a deposit made in his name and that of another would be wholly inconsistent with the theory of a joint tenancy therein and with the purpose to be served establishing a joint account.
194 Miss. at 494-495, 13 So.2d at 25-26. See also May v. Summers, 328 So.2d 345 (Miss. 1976).
The general rule followed by this Court appears to be that "where a joint tenancy account in a bank is made payable to either depositor or survivor, the account passes to the survivor upon the death of a joint tenant." Fondren v. Bank of Franklin, 187 So.2d 304, 306 (Miss. 1966), citing Edwards, Admin. of Est. of Edwards, Dec'd v. Jefcoat, 230 Miss. 56, 92 So.2d 342 (1957); In Re: Ware's Estate, 218 Miss. 694, 67 So.2d 704 (1953); Shearin v. Coleman, 201 Miss. 193, 28 So.2d 841 (1947); In Re: Lewis' Estate, 194 Miss. 480, 13 So.2d 20 (1943); Stephens v. Stephens, 193 Miss. 98, 8 So.2d 462 (1942). See also Stewart, Admin. v. Barksdale, Gunn, et al., 216 Miss. 760, 63 So.2d 108 (1953); Duling, et al. v. Duling's *1328 Estate, et al., 211 Miss. 465, 52 So.2d 39 (1951).
Absent from the above cases is the situation where the creator of a joint tenancy, or a joint tenant, subsequently executes a last will and testament disposing of the joint tenancy funds to some other source. The answer has to be, and is, that the subsequent will does not destroy the joint tenancy and does not terminate that tenancy and divest the corpus of it into the estate of the testator. In that respect, the joint tenancy differs from the tenancy in common.
We are of the opinion that the lower court erred in holding that the funds of the joint account belonged to the Estate of Donald Strange and in ordering Morris Strange to pay over said funds to the estate for administration purposes. Therefore, the judgment of the lower court is reversed and judgment is rendered here for appellant and the case is remanded to the lower court for the purpose of determining the issue of entitlement to the sum of $4,751.00 paid by Morris Strange to Tyna Strange, which issue became moot upon the chancellor's decision.
REVERSED, RENDERED AND REMANDED FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION.
HAWKINS and DAN M. LEE, P.J., and PRATHER, ROBERTSON, SULLIVAN, ANDERSON, PITTMAN and BLASS, JJ., concur.
NOTES
[1] Morris Strange asserts on appeal that this account provided for full rights of survivorship. The record does not contain a copy of the document/agreement by which the account was created, but the estate does not deny that the account expressly provided for the right of survivorship.