755 So.2d 435 (1999)
ESTATE OF Ollie Catherine Horn (Collins) HUDDLESTON.
Raymond Carl Horn and Sandra Annette Horn (Anglin) Morris, Appellants,
v.
Elmer Gene Horn, Appellee.
No. 97-CA-01080 COA.
Court of Appeals of Mississippi.
January 26, 1999.
Rehearing Denied April 20, 1999.
Certiorari Denied June 24, 1999.
*437 Raymond Carl Horn, Jackson, Attorney for Appellants.
Jimmy Miller, Larry O. Lewis, Marks, Attorneys for Appellees.
EN BANC.
BRIDGES, C.J., for the Court:
¶ 1. Raymond Carl Horn (Carl) and Sandra Annette Horn Anglin (Sandra) have appealed from a judgment of the Chancery Court of Quitman County, adjudicating that several purported joint certificates of deposit and a joint personal checking account created by Ollie Catherine Horn (Collins) Huddleston during her lifetime in favor of Elmer Eugene Horn (Gene) should have been paid into her estate and distributed according to the provisions of her last will and testament.
¶ 2. Specifically, Carl and Sandra argue on appeal: 1) that the trial court erred in overemphasizing Miss.Code Ann. § 81-5-63 (Rev.1996), in applying its presumption to banking instruments which were invalid and not intended to substitute the will, 2) that the trial court erred by excluding parol evidence offered by the appellant which would have clarified the deceased's intentions, 3) that the appellant's constitutional due process rights were violated by failing to give proper notice of a hearing, and by erroneously stating in an order that the appellants had entered a joinder and waiver of process, 4) that the appellee violated his fiduciary duty as the administrator by knowingly swearing to a falsehood and disobeying a court order, and 5) that the appellee should be required to pay all costs and expenses, including attorney's fees associated with this appeal. On counter-claim, Gene argues that this was a frivolous appeal, and thus, he is entitled to an award of damages, including attorney's fees, pursuant to M.R.A.P. 38 and Miss. Code Ann. § 11-3-23 (Rev.1991).
¶ 3. Initially, this Court must point out that the appellants's appeal is interlocutory. Moreover, the appellants failed to petition for permission to file this interlocutory appeal, and the appellee did not contest that omission.[1] In MISSISSIPPI SUPREME COURT PRACTICE, Luther T. Munford summarizes the steps to take in order to bring an interlocutory appeal:
The first step in bringing an interlocutory appeal to the Supreme Court is to obtain a ruling from the trial court on the question of law. The next step is to request that the trial court certify its ruling for interlocutory appeal. The request must state proper grounds for certification. This request is a condition precedent to pursuing the appeal, although the trial court's refusal to certify the appeal does not bar Supreme Court review.
Luther T. Munford, MISSISSIPPI SUPREME COURT PRACTICE, 4-9 (1993). Nevertheless, because (a) this case has been fully tried, (b) the fundamental issues upon which the case ought to turn have been decided at the trial level, and (c) the parties have fully briefed and argued the merits of the issues *438 to this Court, we have decided to exercise our authority under Mississippi Rule of Appellate Procedure 2(c) to suspend the rules and reach the merits of this technically interlocutory appeal. See Keyes v. State, 708 So.2d 540 (¶ 1) (Miss.1998).
¶ 4. Accordingly, this Court finds that the jointly held accounts never became a part of the mother's estate, and that the trial court correctly held that the certificates of deposit and checking account were considered will substitutes and not controlled by the will. Moreover, we hold that the appellee is entitled to statutory damages.

FACTS
¶ 5. Ollie Catherine Horn (Collins) Huddleston (Catherine) departed this life on February 26, 1995. Prior to her death, Catherine's estate consisted of real and personal property, including certain certificates of deposit and a personal checking account. Catherine executed her last will and testament in 1972, leaving her entire estate, with an exception not relevant here, to all of her children to be shared equally. In addition, her will designated Gene as the executor.[2] In the years that followed, Catherine executed several certificates of deposit valued at approximately $38,000, which substantially eviscerated the contents of her will. These certificates of deposit were issued to "Ollie Catherine Horn or Elmer Gene Horn[,] joint tenants, with right of survivorship, and not as tenants in common." Additionally, Catherine registered her personal checking account, valued at approximately $32,000, jointly in her name and in her son Gene's name with rights of survivorship and not as tenants in common. Consequently, when Catherine died, Gene claimed ownership as a joint tenant with rights of survivorship pursuant to Miss.Code Ann. § 81-5-63 (Rev.1996).[3]
¶ 6. On July 23, 1997, the chancery court conducted a hearing to determine whether or not the certificates of deposit and the personal checking account were part of Catherine's estate passing pursuant to her will or alternatively, whether or not the same passed directly to Gene through registration pursuant to the banking documents. The court granted a directed verdict in favor of Gene holding that the certificates of deposit and the personal checking account did not pass under the decedent's will but passed pursuant to the banking documents. The court further held that because the accounts were established as joint tenants, with rights of survivorship, and not as tenants in common, Gene was the owner and holder of the funds. Carl and Sandra now appeal to this Court.

ARGUMENT AND DISCUSSION OF LAW

I. WHETHER THE JOINT TENANCY SHARED BETWEEN THE APPELLEE AND THE DECEDENT WAS SEVERED BY THE DECEDENT'S WILL.

*439 II. WHETHER THE COURT ERRED IN EXCLUDING THE APPELLANT'S PAROLE EVIDENCE WHICH WOULD HAVE CLARIFIED THE INTENTIONS OF THE DECEDENT.
¶ 7. Since Carl's and Sandra's Issues I and II deal with whether the joint tenancy created between Catherine and Gene was severed by Catherine's will, we shall discuss them together. Carl's and Sandra's argument on appeal is that although Miss. Code Ann. § 81-5-63 (Rev.1996), which makes no specific reference to wills, expresses the presumption of intent of the maker of a jointly-held banking instrument to vest in the survivor, the statute does not negate previous will provisions which conflict with the banking instrument. Moreover, Carl and Sandra argue that Catherine did not understand "legal terms" and furthermore, never intended for her money in these accounts to go to only one of her three children. Carl and Sandra contend that Catherine's prior history proved that she intended for her money to be equally divided amongst all three of her children. Furthermore, Carl and Sandra argue that the four certificates of deposit were invalid since they were not signed, and that Gene's signature on the checking account was not dated nor proven to be authentic.
¶ 8. Gene argues on appeal that the certificates of deposit were stipulated into evidence and the bank account card was eventually placed into evidence without objection by Carl and/or Sandra. Gene contends that the language on the documents was unambiguous; therefore, parole evidence with regard to the decedent's intent, cannot be used to destroy the language on the documents. Gene argues that Carl and Sandra stipulated that no child of the decedent perpetrated any fraud, duress or undue influence in the creation of the banking documents. Therefore, Gene contends that the trial court was correct in finding that the documents passed to him through his rights of survivorship and not through Catherine's estate. We agree.
¶ 9. An appellate court's standard of review of a chancellor's findings is well settled. We will not overturn the findings of the chancery court if those findings are supported by substantial evidence "unless the chancellor abused his discretion, was manifestly wrong, clearly erroneous or an erroneous legal standard was applied." See Griffin v. Armana, 687 So.2d 1188, 1192 (Miss.1996) (citing Bowers Window and Door Co., Inc. v. Dearman, 549 So.2d 1309, 1312-13 (Miss.1989); Bullard v. Morris, 547 So.2d 789, 791 (Miss.1989)).
¶ 10. "The general rule followed by this Court appears to be that `where a joint tenancy account in a bank is made payable to either depositor or survivor, the account passes to the survivor upon the death of a joint tenant.'" Strange v. Strange, 548 So.2d 1323, 1327 (Miss.1989) (citations omitted). "Without doubt, our law allows competent adults to use such will substitutes with effect and thereby avoid probate." Cooper v. Crabb, 587 So.2d 236, 239 (Miss.1991). Furthermore, Miss.Code Ann. § 81-5-63 (Rev.1996) is very clear as to the legal effect of joint accounts. This statute creates a presumption that Gene is the owner of the funds in the accounts. See Madden v. Rhodes, 626 So.2d 608, 616 (Miss.1993).
The statutes of Mississippi have now abolished the need to prove "intent" in determining ownership of joint accounts. In 1988, the Legislature amended the statutes to expressly state the establishment of any such joint accounts creates an automatic presumption of "intent" to give ownership to the person or persons named on the accounts, whether living or as survivors.
Id. (discussing Miss.Code Ann. § 81-5-63 (Rev.1996)).
¶ 11. In Cooper, Bethay executed a will which left everything to her grandnephews and grandnieces. Cooper, 587 So.2d at 237-38. Thereafter, she opened a checking *440 account, a savings account, and bought three certificates of deposit in her name and in the name of her sister, Etma Cooper, as joint tenants with rights of survivorship. Id. The grandnieces and grandnephews claimed that these funds were part of Bethay's estate and did not belong to their grandmother, Cooper. Id. ¶ 12 The analysis in Cooper is very helpful and somewhat similar to the case sub judice. In Cooper, the court demonstrated the importance of the written contract in determining the intent of the parties. "We search for intent, but when we search for intent we accept that the law directs our search and points first and foremost to the text the parties created. Common sense suggests the parties' writings the most reliable evidence of their intent." Id. at 240. "We spend so much time in search of intent that we often overlook that source of intent most credible de facto and legitimate de jure: the words of the text itself." Id. at 241. Moreover, the fact that the Mississippi statute raises a presumption of ownership simply translated means that the language on the accounts "means what it says and is enforceable as such." Id. at 240-41; see Miss.Code Ann. § 81-5-63 (Rev.1996).
¶ 12. With regard to Carl's and Sandra's argument that parole evidence should have been admitted, the Mississippi Supreme Court has held otherwise. In Cooper, the supreme court held:
Where the language of a legal text is without gross ambiguity, neither parole testimony nor other extrinsic evidence are admissible to show meaning. The rule proceeds from common sense premises, here, that resurrecting the mind of the deceased and deciphering its thoughts four years after the fact is an enterprise fraught with hazard and not just because it is pursued by the self-interested. Our lawmakers realized this long ago and devised more certain means of divining a donor's intent. Today's civil war between a grandmother and her grandchildren is no doubt the sort the lawmakers had in mind and illustrates the wisdom of their actions.
Id. Furthermore, the supreme court held that "[p]arole evidence may not impeach an express survivorship clause...." Id.
¶ 13. Consequently, Catherine's will, in and of itself, is wholly incapable of supplanting in law the later executed joint tenancy instruments. See Id. at 242. The chancery court correctly held that the parole evidence was inadmissible and that the funds represented by the certificates of deposit and the checking account never became a part of Catherine's estate. Accordingly, Gene's right to survivorship is unaffected by the decedent's will.
¶ 14. Additionally, Carl's and Sandra's argument that the certificates of deposit were not signed and thus, were invalid, is without basis. Miss.Code Ann. § 81-5-62 (Rev.1996) and § 81-5-63 (Rev. 1996) do not require signatures. Carl and Sandra also argued that Gene did not properly sign the signature card on Catherine's checking account according to the form's instructions. According to the record, Carl and Sandra stipulated that Gene "did not exercise fraud or undue duress" on Catherine. The checking account card was ultimately admitted into evidence without objection. Furthermore, Carl and Sandra never addressed this issue at trial. Therefore, Carl's and Sandra's claim on appeal is procedurally barred. The law is well settled in this state that the assertion on appeal of grounds for an objection which was not the assertion at trial is not an issue properly preserved for appeal. Ballenger v. State, 667 So.2d 1242, 1264 (Miss.1995). This issue is without merit.

III. WHETHER THE APPELLANTS' CONSTITUTIONAL RIGHTS TO DUE PROCESS WERE VIOLATED BY THE COURT FAILING TO GIVE ADEQUATE NOTICE OF A HEARING AND BY ENTERING AN ORDER THAT ERRONEOUSLY STATED THAT THE APPELLANTS' *441 HAD SIGNED A JOINDER AND WAIVER OF PROCESS.
¶ 15. Carl and Sandra argue on appeal that the court erred in failing to give them proper notice of a hearing, and that the court erroneously stated in an order that they had entered a joinder and waiver of process. Although the appellants' initial brief does not address "what" hearing they are referring to, this Court assumes from their reply brief that the appellants are referring to the proceeding that occurred between the appellee and Chancellor Harvey Ross on April 10, 1995. However, this proceeding was not considered a "hearing" in regard to the general meaning of the word, but was an "ex parte" proceeding,[4] which did not require notice. It seems obvious that Carl and Sandra were aware that this proceeding was an ex parte hearing as their "Response of Two Heirs to Supplement Petition for Probate of Will" stated:
2.2 When Respondents Raymond Carl Horn and Sandra Annette Horn Morris refused to waive service of process for Elmer Gene Horn's Petition for Letters of Administration, he proceeded, without giving Respondents any opportunity to be heard or to be served with legal process. He posted bond and persuaded this Court to sign an Ex Parte order granting him letters of Administration on April 7, 1995. (emphasis added).
Moreover, the statute providing for petitions by an administrator for appointment does not require notice to be given to the parties in an action such as this. See Miss.Code Ann. § 91-7-63 (Rev.1994).
¶ 16. In addition, the "hearing" that was conducted on July 23, 1997, that addressed whether or not the certificates of deposit and the checking account were to be included in the will, also did not require any formal notice since it was apparent from the record that all parties had "joined in" and made their appearance in court either individually or through their attorney of record. Thus, at this juncture, the fact that the appellants did not enter a joinder and waiver of process is irrelevant, and the appellants' due process rights have not been violated.
¶ 17. However, this Court previously determined that this appeal is interlocutory and since an estate cannot legally be "closed" until a final accounting has been issued (which does require proper notice to all parties), and this Court finds nothing in the record that would constitute a final accounting, we remand to the lower court for action on this issue alone.
¶ 18. In regard to Carl's and Sandra's argument that their due process rights were violated where the court order erroneously stated that they had signed a joinder and waiver of due process, this Court finds that although the statement may have been false, it was not reversible error. Additionally, as stated above, up to this point, no formal notice has been required; therefore, this issue is moot.

IV. WHETHER THE APPELLEE VIOLATED HIS FIDUCIARY DUTY AS ADMINISTRATOR BY KNOWINGLY SWEARING TO A FALSEHOOD AND BY DISOBEYING A COURT ORDER.
¶ 19. Carl and Sandra argue on appeal that the order granting letters of administration to Gene contained two false statements: 1) that Carl and Sandra had joined in Gene's petition by their joinder and waiver of process, and 2) that Catherine died intestate. Specifically, Carl and Sandra contend that Gene falsely stated several times that Catherine had died without a *442 will even though he knew that a will existed. Gene argues that he did state initially that no will existed, but that was because the original could not be located and there only existed a copy of the will. Gene contends that Carl lost the original will for several years, and even after it was located, it failed to contain an affidavit of any subscribing witnesses. Furthermore, Gene states that he was the one who ultimately made the appropriate supplemental petition for the admission of the will to probate.
¶ 20. It is this Court's opinion that although Gene's statement that Carl and Sandra had joined and waived process may have constituted error, this Court finds that it was not reversible error. It is apparent from the record that all parties did appear before the court at the July 23rd hearing. The purpose for giving notice is to protect and notify the parties so that they can make an appearance. This was done. It is this Court's opinion that even though a false statement may have been made, there is no evidence that it was done for the purpose of injuring any of the parties, and therefore, it does not constitute error.
¶ 21. Moreover, it is apparent upon review of the record that the chancery judge properly addressed the issue relating to Gene's statement that Catherine died without a will:
Q: I gave you a copy of the will, on what date?
A: Probably the day after she died.
. . . .
Q: And yet, why would you sign under court Oath on the 28th of April 1995 that our mother died without a will?
A: On the advice
BY MR. MILLER: Objection, Your Honor. First off, it's a conclusion thatthey didn't have the original will to give us. So, it was a no
BY THE COURT: Sustained. The court understands the legal significance, and why he would have signed it the way he did, and the fact that they did not at the time have the original will, and therefore not a probatable will.
Q: Would you not have had an opportunity to say that there was a copy [of] a will, but not an original will?
BY THE COURT: The court takes note that that was not an option in the Oath. It's all or nothing. You either have a will or you don't. If you don't have an original will, you don't have a will.
Therefore, we find that the chancery judge appropriately addressed Gene's statement that Catherine died without a will, and this issue is without merit.
¶ 22. Carl and Sandra also contend that Gene violated his fiduciary duty by disobeying a court order. Appellants' primary brief does not discuss this issue; however, since their reply brief does, we shall address it. Carl and Sandra contend that after Gene was removed as administrator, he continued to receive and cash interest checks and failed to immediately turn them over to the newly appointed administrator. Although this issue may have merit, Carl and Sandra address this issue for the first time on appeal. Therefore, Carl's and Sandra's claim is procedurally barred. As stated above, the law is well settled in this state that the assertion on appeal of grounds for an objection which was not the assertion at trial is not an issue properly preserved for appeal. Ballenger, 667 So.2d at 1264. This issue is without merit.

V. WHETHER THE PARTIES ARE ENTITLED TO ALL COSTS AND EXPENSES, INCLUDING ATTORNEY'S FEES.
¶ 23. Carl and Sandra argue in their reply brief "for just damages, costs, and attorney's fees to be awarded to their attorney Carl as suggested in Appellee's Statement of Issues, number 3, on page 2." This Court finds that Carl and Sandra are not entitled to damages under M.R.A.P. 38 *443 or Miss.Code Ann. § 11-3-23 as they are the parties that initiated this appeal and judgment is being entered against them. Furthermore, Carl and Sandra offer no authority for this proposition in their briefs, and we therefore are not required to address it. Warren v. Mississippi Workers' Compensation Comm'n, 700 So.2d 608(¶ 34) (Miss.1997). On counterclaim, Gene also argues on appeal that he is entitled to costs and expenses associated with this appeal. Specifically, Gene contends that he should be awarded damages under M.R.A.P. 38 and Miss.Code Ann. § 11-3-23 (Rev.1991), including attorney's fees. It is this Court's opinion that this appeal was not frivolous according to M.R.A.P 38, but Gene is entitled to damages under Miss.Code Ann. § 11-3-23 (Rev.1991).[5] Since attorney's fees were not assessed initially, it is improper at this point for this Court to award them. Therefore, we remand on this issue for the lower court to make a determination of attorney's fees.
¶ 24. THE JUDGMENT OF THE QUITMAN COUNTY CHANCERY COURT IS AFFIRMED IN PART WITH STATUTORY DAMAGES AND INTEREST AND REMANDED FOR PROCEEDINGS CONSISTENT WITH THIS OPINION. COSTS OF THIS APPEAL ARE TAXED TO THE APPELLANT.
McMILLIN AND THOMAS, P.JJ., COLEMAN, DIAZ, KING, PAYNE, AND SOUTHWICK, JJ., CONCUR.
IRVING AND LEE, JJ., NOT PARTICIPATING.
NOTES
[1] Rule 5 of the Mississippi Rules of Appellate Procedure states:

An appeal from an interlocutory order may be sought if the order grants or denies certification by the trial court that a substantial basis exists for a difference of opinion on a question of law as to which appellate resolution may:
(1) Materially advance the termination of a litigation and avoid exceptional expense to the parties; or
(2) Protect a party from substantial and irreparable injury; or
(3) Resolve an issue of general importance in the administration of justice.
[2] Because of the disagreements that ultimately developed over the will, the chancery court ultimately removed Gene as executor and appointed the chancery clerk, Butch Sniper.
[3] Miss.Code Ann. § 81-5-63 (Rev.1996) states:

When a deposit has been made or shall hereafter be made in the name of two (2) or more persons, payable to any one (1) of such persons, or payable to any one (1) of such persons or the survivor, or payable to any one (1) of such persons or to the survivor or survivors, or payable to the persons as joint tenants, such deposit or any part thereof or interest or dividends thereon may be paid to any one (1) of the said persons, without liability, whether one or more of said persons be living or not, and the receipt of acquittance of the person so paid shall be a valid and sufficient release and discharge to the bank of any payment so made. The making of a deposit in such form, or the making of additions thereto, shall create a presumption in any action or proceeding to which either the bank or any survivor is a part of the intention of all the persons named on the deposit to vest title to the deposit and the additions thereto and all interest or dividends thereon in the survivor or survivors.
[4] Black's Law Dictionary defines "ex parte hearing" as:

On one side only; by or for one party; done for, in behalf of, or on the application of, one party only.
A judicial proceeding, order, injunction, etc. is said to be ex parte when it is taken or granted at the instance and for the benefit of one party only, and without notice to, or contestation by, any person adversely interested.
[5] Miss.Code Ann. § 11-3-23 (Rev.1991) states:

In case the judgment or decree of the court below is affirmed, or the appellant fails to prosecute his appeal effect, the supreme court shall render judgment against the appellant for damages, at the rate of fifteen percent (15%), as follows: If the judgment or decree affirmed be for a sum of money, the damages shall be upon such sum....