LEE, C.J.,
for the Court:
PROCEDURAL HISTORY
¶ 1. William Birmingham died testate on October 14, 2007, and was survived by his two daughters, Nancy Birmingham Walters and Rosemary Birmingham Barnes. Shortly thereafter, Nancy presented Birmingham’s will for probate in the Monroe County Chancery Court and was appointed executrix. On March 10, 2009, Rosemary filed a complaint to remove Nancy as executrix, to revoke Nancy’s letters testamentary, for an accounting, and for damages. The chancellor removed Nancy as executrix and cancelled the letters testamentary. Nancy was ordered to pay to the clerk of the court approximately $41,000 in funds from a joint money-market account Nancy had liquidated after Birmingham’s death. Rosemary’s husband, Don Barnes, was listed as the co-owner of this particular account. Both parties subsequently filed several motions.
¶ 2. A trial was held on August 8, 2010, and October 22, 2010. At the close of Nancy’s case-in-chief, Rosemary and Don made a motion to dismiss pursuant to Mississippi Rule of Civil Procedure 41(b) contending Nancy had failed to support her claim. The chancellor agreed, finding as follows: there was no proof to support the claims of fraud, duress, mistake, incompetency, or undue influence; the money, approximately $41,000, in the joint money-market account which Nancy withdrew was Don’s property; Nancy’s request to amend the pleadings was denied; and the parties were ordered to pay the Estate’s attorney’s fees.
¶ 3. Nancy now appeals asserting the following issues, which we have reordered and rephrased for clarity: (1) Birmingham’s will supersedes the certificate of deposit; (2) the chancellor erred in granting Rosemary’s motion to dismiss; (3) Rosemary and Don changed their position regarding the owner of the joint money-market account; and (4) the chancellor erred in requiring Nancy to contribute to the estate’s attorney’s fees. Finding no error, we affirm.
FACTS
¶ 4. On September 21, 2006, Birmingham moved to Alabama to live with Rosemary and Don. Birmingham had been living with Nancy in Mississippi. During his time in Alabama, Birmingham created several accounts: (1) a certificate of deposit issued November 6, 2006, naming Rosemary as the pay-on-death beneficiary; (2) a joint money-market account established November 6, 2006, with Don as the co-owner; (3) an account with BancorpSouth established June 29, 2007, naming Nancy as the pay-on-death beneficiary; (4) a checking account established on September 25, 2006, with Don added as the co-owner on July 19, 2007; and (5) an Allstate Insurance Annuity, with Nancy and Rosemary named as beneficiaries. The accounts established with either Rosemary or Don as the beneficiary were opened with Regions. At the time of trial, Nancy had liquidated both the joint money-market account naming Don as the co-owner and the account naming her as the pay-on-death beneficiary. The Allstate annuity had also been evenly distributed between Nancy and Rosemary and was not in dispute.
¶ 5. During his time in Alabama, Birmingham created a will on June 8, 2007. *769 However, while visiting Nancy in Mississippi later that month, Birmingham created another will revoking his prior will. This second will was witnessed and executed on June 28, 2007. There was testimony Birmingham was mentally competent at the time and understood what he was doing. In the second will, Birmingham gave “all of [his] property, both real property, personal property and money, C.D.’s, to my daughters ... to share and share alike.” Birmingham moved back to Mississippi on July 21, 2007, to live with his sister in Monroe County. Birmingham died several months later. We will discuss additional pertinent facts as necessary.
DISCUSSION
I. WILL AND JOINT ACCOUNTS
¶ 6. Nancy contends Birmingham’s will supersedes the dictates of the joint accounts; thus, the money in the joint accounts belongs to Birmingham’s estate. Nancy focuses on the account designated as a joint account with right of survivor-ship, namely the account created in Alabama with Don’s name listed as the co-owner. Regardless of whether we apply Mississippi or Alabama law, the result is the same: at Birmingham’s death, the funds in the joint account remained Don’s property. See In re Estate of Cannon v. Ferguson, 733 So.2d 245, 250 (¶¶ 30-31) (Miss.1999); In re Will and Estate of Strange v. Strange, 548 So.2d 1323, 1328 (Miss.1989); Ala.Code § 5-24~12(a) (on death of party, sums in a multi-party account belong to the surviving party); Ala. Code § 5-24-13(b) (right of survivorship may not be altered by will). This issue is without merit.
II. MOTION TO DISMISS
¶ 7. Nancy contends the chancellor erred in granting Rosemary and Don’s joint motion to dismiss. Nancy argues the evidence established undue influence in the creation of the joint accounts with Rosemary or Don as the beneficiaries, such that the funds in these accounts should belong to Birmingham’s estate. Upon our review of the record, the evidence Nancy produced during trial pertains only to the joint account listing Don as the co-owner and not the certificate of deposit listing Rosemary as the pay-on-death beneficiary. Thus, our review will only concern the joint account with Don as co-owner.
¶ 8. In considering a motion to dismiss, the chancellor should consider “the evidence fairly, rather than in the light most favorable to the plaintiff’ and should dismiss the case if it would find for the defendant. Century 21 Deep S. Props., Ltd. v. Corson, 612 So.2d 359, 369 (Miss.1992). We apply our familiar substantial evidence/manifest error standards in reviewing the grant or denial of a motion to dismiss pursuant to Mississippi Rule of Civil Procedure 41(b). Id. “The law in this state on fiduciary or confidential relationships and undue influence is well settled.” Wright v. Roberts, 797 So.2d 992, 998 (¶ 16) (Miss.2001). “[T]he rules of law are different regarding gifts testamentary and gifts inter vivos where a confidential relationship exists between the testator/grantor and the beneficiary/grantee.” Madden v. Rhodes, 626 So.2d 608, 618 (Miss.1993). The supreme court stated as follows:
The prior holdings of this Court indicate a presumption of undue influence only arises in the context of gifts by will when there has been some abuse of the confidential relationship, such as some involvement in the preparation or execution of the will. On the other hand, with a gift inter vivos, there is an automatic presumption of undue influence even without abuse of the confidential rela *770 tionship. Such gifts are presumptively invalid.
Id. If Nancy is able to demonstrate the existence of a confidential relationship between Birmingham and Don, a rebuttable presumption of undue influence arises regarding any inter vivos transactions between the two. Wright, 797 So.2d at 998 (¶ 21). “[0]nce the presumption of undue influence has been established, the burden of proof shifts to the beneficiary/grantee to show by clear and convincing evidence that the gift was not the product of undue influence.” Id. at (¶ 16).
¶ 9. From the evidence presented, we cannot find Nancy demonstrated a confidential relationship existed between Birmingham and Don. According to the evidence presented, Birmingham did not rely upon Rosemary or Don to take care of him. Rosemary or Don occasionally drove him places, but the testimony overwhelming showed Birmingham was self-sufficient. Birmingham cooked his own meals, took care of himself up until a few weeks prior to his death, was capable of handling his investments, exercised regularly, was “sharp as a tack” as far as money was concerned, had a practice of designating beneficiaries on his investments, and administered his own medication. Birmingham had experienced some dementia in the past, but his medical records as recent as June 26, 2006, show he was stable on his medications, was not confused, was lucid, and “totally clear mentally.” Don did drive Birmingham to the bank on the day Birmingham set up the joint account. Don testified he was unaware the account was a joint account until approximately one-and-a-half years after Birmingham’s death. The record supports this as Rosemary and Don pleaded in their initial complaint that they believed the money from this joint account was part of Birmingham’s estate. Furthermore, there was no allegation Birmingham did not understand the nature and consequences of his actions or the extent of his estate.
¶ 10. We find sufficient evidence to support the chancellor’s decision to grant Rosemary and Don’s joint motion to dismiss. This issue is without merit.
III. POSITION REGARDING JOINT ACCOUNT
¶ 11. Nancy argues Don cannot claim ownership of the joint account because Rosemary and Don stated in their complaint that the money in the joint account belonged to Birmingham’s estate. Upon realizing Don was the co-owner of the joint account, which was several months after the complaint was filed, Don filed a counterclaim asserting he was the rightful owner of the joint account. Prior to trial, Rosemary and Don made a motion to amend the complaint to strike the following sentence: “Soon after her appointment Nancy Birmingham Walters took possession of more than Fifty Thousand Dollars ($50,000.00) of Decedent’s probate estate.” In granting the motion to amend, the chancellor asked Nancy if she was prejudiced as a result of this amendment. Nancy responded she was not prejudiced. During arguments concerning Rosemary’s and Don’s joint motion to dismiss, Nancy objected to the amending of the pleadings to strike that particular sentence. However, the chancellor noted she had already “ruled on [Rosemary and Don’s] amendment because there was an agreement before trial began. [The motion to amend] was allowed. I’m not going to go back and address that.”
¶ 12. We review a motion to amend a complaint under an abuse-of-discretion standard. Webb v. Braswell, 930 So.2d 387, 393 (¶ 8) (Miss.2006). The comment to Mississippi Rule of Civil Procedure 15 states: “If the opposing party *771 objects [to amending the complaint] but fails to persuade the court that such party will be prejudiced in maintaining the party’s claim or defense, the court must then grant leave to amend the pleadings to allow the evidence on the issue.” M.R.C.P. 15 cmt. Rule 15(a) states that leave to amend “shall be freely given when justice so requires.”
¶ 13. We find no abuse of discretion by the chancellor in allowing Rosemary and Don to amend their complaint. Rosemary and Don had discovered the joint account belonged to Don; thus, their amendment was merely to conform to the evidence. Furthermore, Nancy admitted she was not prejudiced by this amendment. This issue is without merit.
IV. ATTORNEY’S FEES
¶ 14. In her final issue on appeal, Nancy argues she should not have been required to pay a portion of the attorney’s fees. The chancellor ordered Nancy to pay $1,500; Rosemary to pay $750; and Don to pay $750. These fees were to be paid to the attorney who represented the administrator of Birmingham’s estate during the trial. It is within the discretion of the chancellor to award attorney’s fees for services rendered in the administration of an estate. Estate of McLemore v. McLemore, 63 So.3d 468, 485 (¶ 46) (Miss.2011). Nancy has failed to support her argument with authority; thus, this Court is precluded from considering these claims on appeal. R.C. Petroleum, Inc. v. Hernandez, 555 So.2d 1017, 1023 (Miss.1990).
¶ 15. THE JUDGMENT OF THE MONROE COUNTY CHANCERY COURT IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
IRVING AND GRIFFIS, P.JJ., BARNES, ISHEE, ROBERTS, CARLTON, MAXWELL, RUSSELL AND FAIR, JJ., CONCUR.